**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>)<br>**Plaintiff,** )<br>**vs.** )<br>)<br>)<br>**KENNETH THEIS,** )<br>)<br>**Defendant.** )<br>_____) | **Case No.  14-20072-01-JAR** |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant Kenneth Theis was charged in a Second Superseding Indictment with two counts of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e). A bench trial was held on July 7, 2015.  This decision represents the Court's findings of fact and conclusions of law that Defendant is guilty of both counts charged in the Second Superseding Indictment.

## I.      Findings of Fact

The following facts are either stipulated by the parties, or found by the Court beyond a reasonable doubt based on the evidence admitted at trial.

### A.      Charged Conduct

On April 13, 2014, Defendant Kenneth Theis intentionally placed a Samsung cell phone[1] in the bathroom of his girlfriend's residence on Overland Drive in Lawrence, Kansas.  He pressed the record button on the phone's camera, and a video recording of V.V.O., his girlfriend's eleven-year-old daughter, was created.  V.V.O. was unaware that she was being recorded.  The phone was placed on a shelf just above the toilet, where it was trained directly in

_____

[1]Ex. 1.

front of the toilet and next to the shower.  Defendant strategically placed the camera in this location to capture the naked genitalia of V.V.O.  Exhibit 19 is a still image of Defendant taken from the video recording that occurred on April 13, 2014.  Defendant retrieved the phone after it had recorded V.V.O. in the shower.

Defendant transferred the April 13 video of V.V.O. to his Toshiba laptop computer.[2] Using video software, Defendant then created still images of V.V.O. from the recordings. Exhibits 7 through 18 are photographs that were created using video editing software called Wondershare that had been installed on the defendant's Toshiba laptop on March 27, 2014.  The video created by Defendant on April 13, 2014, was loaded into that video editing software on more than one occasion.  The video was loaded into the Wondershare program for the first time on April 14, 2014.  It was loaded a second time on April 17, 2014, at which time Government's Exhibit 5 was pulled into the Wondershare program, and the still images, which were admitted as Exhibits 7 through 18, were created.  Those images were saved in the file path C:\Users\ Kenny\ documents\wondersharevideoeditor\usersource\snapshots.  Each of those still images were recovered from Defendant's computer.[3]  All of the still images capture V.V.O. naked in her bathroom.  Most of these images focused on the child's genitalia.  Only five of the twelve images include the child's face in the frame.  Exhibits 7 and 8 are specifically captured images of only the genitalia.  In Exhibit 8, the child has her foot on top of the toilet lid, so the image suggests a spreading of the legs.  Exhibit 11 likewise, is an image directly focused on the child's genitalia. It appears she is attempting to put on her underwear, and the image once again suggests a

---

[2]Ex. 95.

[3]Exs. 7–18.

spreading of the legs.  The sole focal point of all three of these images is the genitals or pubic area of the child.

Detective Dean Brown from the Lawrence, Kansas Police Department, testified about his forensic examination of Defendant's cell phones and laptop computers.[4]  Brown found covert video recordings of two younger females, one of which appeared to be under the age of 18. (Tr. p.38).  Brown found a total of 39 movies, although some of them were duplicates because some of them were copies from a different device.  He stated the video activity started around March 17, 2014 and continued to May 4, 2014.  Brown traced the video files from Defendant's phones to the Toshiba laptop, and an HP Laptop.

On May 4, 2014, Defendant placed Samsung and Pantech cell phone[5] cameras in the bathroom of his girlfriend's residence on Overland Drive in Lawrence, Kansas.  He pressed the record button and a video recording of V.V.O. entering and exiting the shower naked was created.   V.V.O. testified that she had been alone in the house with Defendant on that day.  She told Defendant she was going to take a shower because she always let people in the house know when she is showering so they do not walk in on her.  Defendant told her to hold on, then went into the bathroom, through a door in her mother's room, and then came out the other door that leads to the hallway.  After she saw Defendant leave, V.V.O. went into the bathroom and noticed the telephones above the toilet.  At first, V.V.O. only saw the small phone and noticed it was recording.  She stated she either stopped it from recording, or turned it around.  She then continued with her shower.  After she finished showering, V.V.O. got dressed in the bathroom

---

[4]Exs. 1, 2, 3, 95, 96.

[5]Ex. 2.

and then went to look above the toilet area again.  She removed the phones and noticed the "big one" was still recording.  She wrapped the phones in her towel and took both phones with her into her room.  Defendant then went into the bathroom and asked V.V.O. where his two phones were.

After brushing her hair, V.V.O. went out into the hallway and confronted Defendant, who was standing at the other end of that hallway.  She asked him if these were the two phones.  Defendant said, "yes."  She asked him why he was recording her.  Defendant asked to see the phones and V.V.o. said "no."  Defendant began walking toward her, so she ran down the stairs to the garage to get her bicycle.  V.V.O. was scared when Defendant walked toward her, even though he did not seem "angry or anything."  V.V.O. rode her bike to her friend's house, taking an indirect route, because she was afraid Defendant would try to follow and take the phones away from her.  She was crying when she arrived at her friend's house and explained to her and her mother what had happened.  The friend put her bicycle inside the garage, in the event Defendant drove by, because Defendant knew where the friend lived.  V.V.O. attempted to call her mother, did not get an answer, so she called her sister, Raquel Ortega.

V.V.O. told Ortega that she was getting ready for a shower when she found two cell phones recording her.  Ortega went to her mother's place of employment and drove her mother to the house on Overland Drive.  Upon arriving at the house, Ortega observed that Defendant was there and already packing his things.  Ortega's mother confronted Defendant and asked him to leave.  Ortega and her mother next went to V.V.O's friend's house.  After talking to V.V.O., Ortega and her mother each took a cell phone and went into a bedroom.  Ortega began looking at the Samsung phone and saw pictures of her sister naked.  She immediately stopped looking at the

4

phone, and told her mother they needed to go to the police, which they did.  When they returned to their house on Overland Drive, Defendant was no longer there.

Police located Defendant at a Hy-Vee grocery store, and Defendant agreed to go to the police station and give a statement, which the Court has reviewed.[6]  Defendant immediately admitted that what he did was "wrong" and "very very creepy," but denied that it was child pornography.  Defendant stated that V.VO. had been "flirtatious" with him, but that he was not trying to place any of the responsibility on her; he said he had nobody to blame.  He adamantly denied recording V.V.O. before that day, stating it was a "huge lapse in judgment" and just a "spur of the moment" decision.  He stated that once he discovered the phones were gone, he "knew," and began packing his things.  He claimed he got caught the first time he tried it.  Defendant told the officers he would have deleted the video.  He again reiterated this was the first day he had made a video recording of V.V.O.

Defendant admitted his face would be on the video, because he turned on the record feature of the phones before placing them under the shelf.  Defendant was asked if the idea was to get video of V.V.O. undressed before she got in the shower, and Defendant responded he wanted to get that "split second" of her.  When Defendant was asked if he was sexually attracted to V.V.O., or if it was a fantasy, he shook his head no, he claimed it would be a "quick look and a delete."

Defendant told the officers that he never ever uploaded the videos from his phone to his computer.  After a short break, Defendant was confronted with the fact that detectives had learned there was more than one incident in which Defendant recorded V.V.O.  Defendant

---

[6]Ex. 97.

admitted to another incident but confessed he had not told them about it because he was "hoping it would not be found." Defendant admitted there was one other video taken "about a month ago," and then said, "hand to bible" there is nothing else. He said he never wanted to take it to a different level. He admitted V.V.O. was naked in the other video and claimed he only watched it twice. When asked how many times the computer examiners would find he watched the video of V.V.O., he said maybe three or four times and then said, "well it's probably 5-10 times." Defendant finally admitted the reason he recorded V.V.O. was for sexual purposes, and then stated, "it was the safest alternative," and the "last thing I wanted to do was lay a hand on her." Defendant admitted he recorded V.V.O. out of sexual curiosity, and watched the videos to get sexual gratification. Defendant claimed that he used the videos to prevent him from taking it to the next level, and he indicated that V.V.O. was a younger version of her mother, so it was like seeing a young Rosa.

On April 13 and May 4, Defendant activated the record function of the cameras with the intent to capture an image of the private areas of V.V.O. On both occasions, the cameras recorded V.V.O. engaged in bathroom activities, including donning and doffing clothes before and after a shower, entering and exiting the shower, drying herself off with a towel after showering, and using the toilet.

At all times relevant to this case, the victim, V.V.O., was an 11 year-old-minor child. Defendant admitted during his May 4, 2014 interview with Lawrence, Kansas police officers, that he knew V.V.O. was 11 years old when he surreptitiously recorded her in her bathroom. He explained he had been dating V.V.O.'s mother for approximately one year at the time of the interview.

The two cell phones Defendant used to record V.V.O. on April 13 and May 4 were manufactured outside the State of Kansas.

### B.        Uncharged Conduct

The Government has submitted evidence that Defendant made seven other surreptitious recordings of V.V.O. in her bathroom on other dates not charged in the Indictment.  Before trial, Defendant moved to exclude this evidence as inadmissible under Fed. R. Evid. 404(b).  The Government argued that the videos are intrinsic to the crimes charged and therefore not subject to Rule 404(b) because they establish that Defendant filmed the victim several times but chose to manipulate only the two recordings in which V.V.O. was depicted nude, which demonstrates Defendant's intent to produce child pornography.  He did not choose to manipulate the images of her using the toilet.  The Government argues further that the evidence is admissible under Rule 404(b) as evidence of planning, purpose, intent, knowledge, and lack of mistake.  The Court conditionally admitted this evidence at trial, subject to a later ruling on admissibility in rendering a verdict.

Defendant argued that the evidence of other uncharged conduct is pure propensity evidence and that even if it is not improper under Rule 404(b), it is not relevant to the crimes charged in this case.  Defendant states that his defense is that he did not specifically intend to produce a visual depiction of the minor engaged in sexually explicit conduct, he did not intend to create child pornography, and he did not use the minor to engage in sexually explicit conduct and did not have the intent to do so.  Because he does not raise mistake as a defense, he argues that the other videos are not relevant and even if relevant, they would lead to substantial prejudice that outweighs any probative value.  Defendant also complains that the evidence

should not be admissible as intrinsic to the charged crimes because evidence of the other incidents would not be necessary to understand any witness's testimony.

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  But it may be admissible for a proper purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[7]  The Court is to consider four factors in weighing the admissibility of evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect, and (4) a limiting instruction is given if the defendant so requests.[8]

Rule 404(b) applies to evidence of acts extrinsic to the acts charged.[9]  Evidence of other acts is intrinsic to the crime charged, and does not come within the scope of Rule 404(b), if "it was part of the scheme for which a defendant is being prosecuted,"[10] or "so 'inextricably intertwined' with the crime charged that the testimony concerning the charged act 'would have been confusing and incomplete without mention of the prior act.'"[11]  "Extrinsic evidence, on the

---

[7]Fed. R. Evid. 404(b)(2).

[8]*See, e.g.*, *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006).

[9]*United States v. Record*, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989) (citing *United States v. Orr*, 864 F.2d 1505, 1510 (10th Cir. 1988)); *United States v. Arney*, 248 F.3d 984, 992 (10th Cir. 2001).

[10]*Record*, 873 F.2d at 1372 n.5  (citing *Orr*, 864 F.2d at 1510).

[11]*United States v. Treff*, 924 F.2d 975, 981 (10th Cir. 1991) (quoting *United States v. Richardson*, 764 F.2d 1514, 1521–22 (11th Cir. 1985)); *see also United States v. Jeffrey*, 128 F. App'x 680, 698–99 (10th Cir. 2005) ("Rule 404(b) only applies to acts extrinsic to the crime charged.  Evidence of acts intrinsic to, inextricably intertwined with, or a *necessary preliminary* to the crime charged, is admissible.") (citing *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999); *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (emphasis added)).

other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense."[12]

The Court need not decide whether evidence of Defendant's seven other recordings are intrinsic, because even if they are extrinsic, they are admissible under Rule 404(b) to show knowledge, preparation, plan, intent, and absence of mistake. Defendant denies intending to produce sexually explicit images of V.V.O. and claims that while he understood he "did something wrong," he merely attempted to create a visual depiction of V.V.O. for his own voyeuristic purposes. The evidence proffered by the Government shows that Defendant's conduct on each of these other occasions was similar to the charged conduct and deliberate: he personally set the phones up in the bathroom to record and personally retrieved them after V.V.O had been in the bathroom; he copied the recordings to laptop computers and then created Wondershare projects with them; and he created twenty still images from one of the videos, three of which depicted V.V.O.'s genitals. Given that Defendant claims he did not intend to produce sexually explicit material, the probative value of this evidence is extremely high. The Court cannot find that the probative value is substantially outweighed by the prejudicial impact. This case was tried to the bench, so the risk of jury confusion is low. The Court is capable of considering this evidence only for the limited purpose upon which it is admissible under Rule 404(b). Evidence of the other seven recordings is therefore admitted under Rule 404(b) and the Court considers this evidence in reaching its verdict.[13]

---

[12]*United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995).

[13]Defendant stipulated to the admission of these exhibits, while preserving his objection under Rule 404(b). Because Defendant's objection is overruled, the Court at this time fully admits those exhibits for purposes of the record.

The first of the other recordings occurred on March 24, 2014.  Defendant placed an LG telephone in the bathroom in order to record V.V.O.  The recording was copied to Defendant's Toshiba laptop computer on March 26, 2014, and was later copied to an HP laptop computer on April 28, 2014.  Exhibit 31 further details that the video of V.V.O. created on March 24, 2014, was included in two Wondershare projects.  The first on April 28, 2014 was entitled VE Project 1.  The second project occurred on that same date, but was given the name VE Project 2.  Because no still images were created as part of these projects, Defendant may have used the Wondershare program to view the video.

On March 25, 2014, Defendant created another video on his Samsung Galaxy SII telephone depicting V.V.O. while she used the toilet.  The forensic report, admitted as Government's Exhibit 33, details how Defendant transferred Exhibit 32 to his Toshiba laptop on March 27, 2014.  Defendant added the video to his Wondershare program, as well as the Windows Live Movie Maker project, My Movie.

On March 31, 2014, at approximately 20:22 hours, Defendant created another video using the Samsung Galaxy SII phone, admitted as Exhibit 35.  It was transferred to the Toshiba laptop on April 2, 2104.  That same video file was subsequently transferred to the HP laptop on April 28, 2014.  The video depicts V.V.O. using the toilet.  Exhibit 37 is a still image of Defendant retrieving the phone immediately after V.V.O. left the bathroom.  Approximately 31 minutes later, at approximately 20:53 hours, Defendant once again recorded V.V.O. using the Samsung Galaxy SII telephone in the bathroom.  It was copied to the Toshiba laptop on April 2, 2014.

On April 3, Defendant once again made a video recording of V.V.O. using the Samsung

10

Galaxy SII telephone.  That video was too dark to see who placed the phone to make the recording.  Government's Exhibit 44 was copied to the Defendant's Toshiba laptop on April 5, 2014, and then copied to Defendant's HP laptop on April 28, 2014.

On April 13, 2014, Defendant placed the Samsung Galaxy SII telephone in the bathroom to capture video of V.V.O.  A still image depicts Defendant retrieving the phone on April 13, 2014.  This recording was copied to Defendant's Toshiba laptop on April 14, 2014.  Defendant used that video to create two Wondershare projects: VE project 4 on April 14, 2014, and VE project 7 on April 17, 2014.  On April 28, 2014 the file was transferred to Defendant's HP laptop.

The next day, April 14, 2014, Defendant again used the Samsung Galaxy SII telephone and recorded V.V.O. using the toilet.  The video was copied to Defendant's Toshiba laptop on April 24, 2014.  A Wondershare project (VE project 9), was created on the Toshiba shortly after the video was copied to the laptop.

On April 23, 2014, Defendant used both the Samsung Galaxy SII and the Pantech cellular telephones to record V.V.O. using the shower.  Still images from the videos show Defendant placing the phones and removing the phones after the recordings were made.  The forensic examination showed the telephone videos were copied to the Toshiba laptop on April 25, 2014.  This video was also added to a Wondershare video project (VE project 8).  Twenty still images were created with this project.  The images created from the April 23, 2014 video also capture V.V.O. naked.  None of the still images have the girl's head or face depicted in them.  All of them show her naked torso, as she appears to be toweling off after her shower.  Defendant selected images like Exhibits 69, 70 and 72.  Those images focus on the child's genitals, and in

11

Exhibit 72, it appears the child is touching her vaginal area as if masturbating.

Finally on April 27, 2014, Defendant used his Samsung Galaxy SII telephone to create a video of V.V.O.  This video file was recovered from the microSD card and did not appear on any other media.  The video shows Defendant placing the camera, and then V.V.O. enters and uses the toilet.

## II.    Conclusions of Law

The Second Superseding Indictment (Doc. 48) in this case alleges two counts of attempt to violate 18 U.S.C. § 2251(a)&(e), the sexual exploitation of a child statute.[14]   Counts One and Two are identical with the exception of the date: Count 1 charges conduct on April 13, 2014, and Count 2 charges conduct on May 4, 2014.  18 U.S.C. § 2251(a) provides as follows:

> (a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

Congress defined several terms in the statute. "Minor" means any person under the age of

---

[14]The First Superseding Indictment added citations to 18 U.S.C. § 2251(e) to each charge and also added that the minor was an "unaware prepubescent female."  Doc. 35.  Subsection (e) provides that it is a violation of the statute to conspire or attempt to violate the statute.  The Second Superseding Indictment amended the date on the first count from March 27, 2014 to April 13, 2014.  Doc. 48.

eighteen.[15]  "Producing" means "producing, directing, manufacturing, issuing, publishing, or advertising."[16]  "Visual depiction" includes "data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format."[17]  As relevant in this case, "sexually explicit conduct" "[m]eans actual or simulated . . . . lascivious exhibition of the genitals or pubic area of any person."[18]

Under § 2251(e), a person who attempts to violate the statute is punished to the same extent as a person who directly violates.  To prove attempt, the Government must show that Defendant took a "substantial step" toward the proscribed conduct.[19]  That step must be more than mere preparation.[20]

### A.    "Use" Element and Intent

Defendant does not dispute that V.V.O. was a minor.  He does dispute the other elements in the statute and contends that the Government cannot show that he took a substantial step to use, persuade, induce, entice, or coerce any minor to engage in sexually explicit conduct.  This Court ruled on the boundaries of the "use" element in its July 1, 2015 Order denying Defendant's motion to dismiss.[21]  As the Court explained in detail, the circuit courts to decide the

---

[15]18 U.S.C. § 2256(1).

[16]§ 2256(3).

[17]§ 2256(4).

[18]§ 2256(2)(A).

[19]*United States v. Dobbs*, 629 F.3d 1199, 1208 (10th Cir. 2011).

[20]*United States v. Munro*, 394 F.3d 865, 869 (10th Cir. 2005).

[21]Doc. 74.

issue have concluded that the "use" element is "fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography."[22]  It does not require that the Defendant cause a minor to engage in the conduct recorded.[23]  The Court incorporates by reference its decision on the motion to dismiss in rejecting Defendant's trial argument that the definition of "use" should be construed more narrowly.

Next, Defendant argues that there is no evidence that Defendant had a specific intent, when he placed the cameras in the bathroom, to use a minor to engage in sexually explicit conduct.  Instead, Defendant argues that the evidence shows that Defendant intended only to capture an image of the child "in a state of undress," or of "her private areas."  So Defendant does not dispute that he intended to capture naked images of V.V.O.  He instead argues that Defendant did not intend to capture naked images that rise to the level of sexually explicit conduct.  The Court disagrees.  First, Defendant placed the phones in a hidden position that was aimed toward an area of the bathroom where Defendant knew V.V.O. would be naked as she entered and exited the shower.  On the shelf above the toilet, the cameras were aimed specifically at the minor's torso and genital area.  On both occasions, it is undisputed that he personally placed the phones in this location and pressed the record button, knowing V.V.O. would be taking a shower soon.  He downloaded the Wondershare program three days before the first video recording that appears on his laptop computer was created.  Thereafter, it appears that

---

[22]*United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996); *see also, e.g.*, *United States v. Wright*, 774 F.3d 1085, 1088–89 (6th Cir. 2014); *Ortiz-Graulau v. United States*, 756 F.3d 12, 18–19 (1st Cir. 2014); *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013) ("a perpetrator can 'use' a minor to engage in sexually explicit conduct without the minor's conscious or active participation"); *United States v. Engle*, 676 F.3d 405, 419 n.9 (4th Cir. 2012); *United States v. Fadl*, 498 F.3d 862, 866–67 (8th Cir. 2007); *cf. United States v. Wolf*, 890 F.2d 241 (10th Cir. 1989) (applying statute to photographs of sleeping child) .

[23]*See, e.g.*, *Wright*, 774 F.3d at 1091.

Defendant attempted to create Wondershare projects for all of his recordings. After putting the April 13 recordings into the program, he created still images of V.V.O that zoom in on her genitalia. Defendant admitted during his interview that he was looking for a "split second" shot of V.V.O. in order to avoid physically touching her, that he repeatedly watched the videos for sexual gratification, and that it reminded him of seeing a younger version of his girlfriend. All of this evidence proves to the Court beyond a reasonable doubt that Defendant had the specific intent to use V.V.O (by recording her), to engage in sexually explicit conduct. The Court finds sufficient evidence that Defendant "photographed [a minor] in order to create pornography," as the Eighth Circuit characterizes this element of the claim.[24]

Defendant argues that V.V.O.'s act of entering and exiting the shower naked does not constitute "sexually explicit conduct." The Court looks to the non-exhaustive list of "*Dost* factors"[25] to determine whether an image constitutes lascivious exhibition, the pertinent inquiry under the statutory definition of sexually explicit conduct:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual

---

[24]*United States v. Strong*, 773 F.3d 920, 925 (8th Cir. 2014) (quoting *United States v. Vanhorn*, 740 F.3d 1166, 1168 (8th Cir. 2014)).

[25]*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom.*, *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *cert. denied*, 484 U.S. 856 (1987); *see also United States v. Wulf*, 890 F.2d 241, 245 (10th Cir. 1989).

response in the viewer.[26]

As already described, the phones were placed on a shelf just above the toilet in the bathroom, at a level that was aimed in front of the shower door in order to capture a person entering and exiting the shower. The recorded images focus on the child's torso and genitalia and the still images from April 13 are manipulated to zoom in on her genitalia. Only five of the twelve images from that recording include the minor's head. The bathroom setting is not sexually suggestive, but the Court notes that two of the still images from the April 13 recording, depict V.V.O. in positions that suggest a spreading of the legs.[27] She is fully nude during part of the recording, the only part that Defendant chose to capture in still images.

Importantly, the Court finds that the visual depiction was intended or designed to elicit a sexual response in himself and like-minded individuals. He watched the April 13 video 5-10 times, an admission Defendant made during his interview after twice misrepresenting that he viewed them only a few times. And Defendant recorded V.V.O. with the intent to manipulate the images by using the Wondershare program to zoom in on V.V.O.'s genital area. Defendant created the still images described above from the videos recorded on April 13, and he created similar images from a recording on April 23, demonstrating that he sought to capture V.V.O. in a sexually suggestive manner, in order to convert carefully selected excerpts into further lascivious exhibitions of V.V.O.'s genital area. He did not enhance or manipulate images of her using the toilet, or images of her in her clothing. He intended to elicit in himself a sexual response by both recording V.V.O. before and after the shower, and by later creating enhanced still images. His

---

[26]*Id.*

[27]Exs. 8, 11.

statements support this finding—he admitted that he intended to capture that "split second" of her, that he recorded her to avoid physically touching her, that he was motivated by the fact that she looked like a younger version of his girlfriend, and that he viewed them out of sexual desire. The Court does not find credible Defendant's initial statements to police that he recorded V.V.O. merely out of curiosity, or that he was not sexually aroused by the videos.  He lied several times during the interview and the Court believes he lied when he said he was not sexually aroused by these videos.  His other, later statements about his motivation for recording V.V.O. convince this Court that he did so for the purpose of sexual gratification for himself and others similarly situated.  The purpose of surreptitiously recording V.V.O. was to produce a visual depiction of her engaging in sexually explicit conduct.  After considering all of the relevant *Dost* factors, the Court finds that the images depict a lascivious exhibition of V.V.O.'s genital area.[28]

### B.   "Producing" Element

Defendant argues that there is insufficient evidence that he used a minor "for the purpose of producing" a visual depiction of sexually explicit conduct.  He repeats his argument as to the "use" element, that he only intended to capture V.V.O. in a "state of undress."  "Producing" is defined broadly and non-technically under the statute.[29]  As described above, there was sufficient evidence to establish beyond a reasonable doubt that Defendant intentionally used V.V.O. for the purpose of producing a visual depiction of sexually explicit conduct.  He produced visual

---

[28]*See United States v. Helton*, 302 F. App'x 842, 849 (10th Cir. 2008) (finding surreptitious recording of minor in her underpants was sexually explicit conduct); *United States v. Horn*, 187 F.3d 781, 789–90 (8th Cir. 1999) (finding photographs of minors on a beach in swimsuit bottoms were lascivious given the way in which the pictures were framed).

[29]*United States v. Wright*, 774 F.3d 1085, 1091–92 (6th Cir. 2014); *United States v. Fadl*, 498 F.3d 862, 866–67 (8th Cir. 2007); *United States v. Poulin*, 631 F.3d 17, 22 (1st Cir. 2011).

depictions in video and still formats from the recordings on April 13 and April 23, downloading them into his laptop computer.

Defendant suggests that the Court should not evaluate the still images he created on April 14 and 17, from the video he recorded on April 13, because the grand jury only charged him with conduct on April 13 and May 4, and not on the dates that the still images were created.  He contends that the production of still images therefore was not the "producing" that was charged by the grand jury.  The Court does not agree with Defendant's interpretation of the statute, which requires the Government to show that he used a minor with the intent that the minor "engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."  As explained above, and in the Court's Order denying the motion to dismiss, the "use" element is satisfied by Defendant's video recording of V.V.O. on the charged dates.  The Government must also show that when he recorded V.V.O., he intended that V.V.O. engage in sexually explicit conduct <u>for the purpose of producing</u> a visual depiction of such conduct.  The grand jury was not required to identify the dates on which the production occurred; it identified the date on which the use of the minor occurred, which was done for the purpose of producing the visual depiction.  It is enough under the statute for the Government to prove that Defendant's intent when he recorded V.V.O. was to later produce a sexually explicit image.  As the First Circuit has explained, "the government did not need to establish at what point 'production' occurred."[30]  And as explained above, Congress intended the term "producing" to apply broadly.

---

[30]*Poulin*, 631 F.3d at 22; *see also United States v. Sturm*, 672 F.3d 891, 901 (10th Cir. 2012) ("A visual depiction is created once—when the child sexual abuse is captured on some type of media; it is not created anew each time that substantive content is transferred to a different storage device or transmitted over the Internet.  All copies of the same substantive content are the same visual depiction.  Thus, a visual depiction can be contained both in the particular tangible or digital media possessed, received, or distributed by a defendant and also in any other form or copy of the image, including the original. . . .").

As the Seventh Circuit has explained:

> To "issue" or "publish" a visual depiction, for example, a defendant would need to copy or store the visual depiction. The defendant's chosen storage devices—here, Foley's hard drives—could be considered by a jury as material used in "production" sufficient to satisfy the commerce element, assuming sufficient proof that the storage device at issue traveled in interstate or foreign commerce. A narrower construction, particularly one that would limit "production" to only the moment an image is captured by a camera, is problematic for the simple reason that it is not compatible with Congress's definition of production. How does someone "direct" or "advertise" using a camera? A narrower construction would also enable a producer of child pornography to immunize himself from prosecution for production by copying the digital files to a new storage medium and then simply dropping his camera in the nearest lake. That cannot be what Congress intended. And our conclusion is bolstered by Congress's definition of "visual depiction," which clearly contemplates the digital storage of the images post-creation. 18 U.S.C. § 2256(5) ("visual depiction" includes "data stored on computer disk or by electronic means which is capable of conversion into a visual image") (emphasis added). A jury could find that the means of copying or storage—the diskettes in *Angle* and the hard drives here—are part of the production process, and are material that could satisfy the government's burden to prove the commerce element.[31]

Here, the Government proved that Defendant's production process included recording the videos on the dates charged in the Indictment, downloading and storing the April 13 recording onto a laptop computer, and creating Wondershare projects that allowed him to create still images. The videos meet the production element, as do the still images Defendant later created from the April 13 recording. The Court further finds that the evidence circumstantially proves that Defendant intended to produce similar still images from the May 4 recordings, as well. Had he not been caught and arrested after the May 4 incident, the Court has no reasonable doubt that Defendant would have created a Wondershare project from that recording to enable the creation

---

[31]*United States v. Foley*, 740 F.3d 1079, 1085–86 (7th Cir. 2014).

of still images.

### C.     Interstate Commerce

The statute contains an interstate commerce element, which "requires the government to show either that the images traveled in, or that the defendant knew the images would travel in, interstate or foreign commerce, or that any material used to produce the images traveled in interstate or foreign commerce."[32]  The Government chose the third path of proving the interstate commerce element—the phones used to record V.V.O. were manufactured outside the State of Kansas.  Defendant argues that the Government must show that the cameras used to record V.V.O. traveled interstate for the purpose of committing the crimes charged.  Defense counsel acknowledged at trial that Tenth Circuit law does not support his position and that the Court is bound by that law.[33]  The Court further finds that the plain language of the statute supports a reading that <u>any</u> material, and not necessarily all materials, used to produce the images must have traveled interstate.  The Court finds that the cameras are materials that went into producing the recordings, and later the still images.[34]  Because it is stipulated that both cell phones used to record V.V.O. were manufactured outside of the State of Kansas, and therefore traveled interstate, the interstate commerce element is satisfied.

### D.     Legal Impossibility Defense

Finally, Defendant renews his argument raised in the motion to dismiss that it was legally

---

[32]*Id.* at 1082.

[33]*See United States v. Schene*, 543 F.3d 627, 637 (10th Cir. 2008); *United States v. Jeronimo-Bautista*, 425 F.3d 1266, 1273 (10th Cir. 2005) (rejecting commerce clause challenge to § 2251(a) because Congress acted rationally in determining that regulating local production of child pornography curbs the supply at its source, before it is released to the interstate market).

[34]*Schene*, 543 F.3d at 637–38; *Foley*, 740 F.3d at 1085.

impossible for him to attempt to violate 18 U.S.C. § 2551(a) because he actually created a visual

depiction.  For the same reasons explained in its Order denying the motion to dismiss, the Court

rejects this legal argument.  The majority of courts to decide the issue have held that failure to

complete an offense is not an element of an attempt crime.[35]  As these courts explain, if the rule

were otherwise, it would lead to absurd results: it would "result in the 'anomalous situation of a

defendant going free not because he was innocent but for the very strange reason, that he was too

guilty.'"[36]

### III.     Conclusion

Based on the above stated findings of fact and conclusions of law, the Court finds that

Defendant is adjudged guilty of Counts 1 and 2, in violation of 18 U.S.C. § 2251(a) and (e).  The

Court orders that a Presentence Investigation Report be prepared and that the Clerk set the case

for sentencing.

**IT IS SO ORDERED**.

Dated: September 25, 2015

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[35]*See, e.g.*, *United States v. Rivera-Relle*, 333 F.3d 914, 920 (9th Cir. 2003); *United States v. York*, 578 F.2d 1036, 1039 (2d Cir. 1978) (collecting cases); *United States v. Malasanos*, 472 F.2d 642 (7th Cir. 1973).

[36]*York*, 578 F.2d at 1039 (quoting *United States v. Fleming*, 215 A.2d 839, 840–41 (D.C. Cir. 1966)).